IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACY A. GRIFFIN,<br>        Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DELAGE LANDEN FINANCIAL<br>SERVICES, INC., | : | NO. 04-CV-5352 |
|         Defendant | : | |

**M E M O R A N D U M**

TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE                                                                                                   December 5, 2005

      Plaintiff Stacy A. Griffin ("Griffin") alleges defendant De Lage Landen Financial Services, Inc. ("De Lage")[1] engaged in gender discrimination, retaliation, and created a hostile work environment, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e and the Pennsylvania Human Relations Act, 42 Pa. Cons. Stat. Ann. 955. Trial will commence December 12, 2005. Defendant has filed motions in limine, which are granted in part and denied in part, for the reasons that follow. Plaintiff has filed a motion in limine, which is granted.

      I.      Facts

      Griffin's claims stem from a romantic relationship she had with De Lage co-worker Alexander Ortega, who was promoted in February 2001 to senior vice president of De Lage's healthcare small business unit. The Griffin-Ortega relationship ended shortly before Ortega's promotion, causing Griffin to inform De Lage officials of her concerns working with Ortega. Griffin then met Ortega for a previously scheduled dinner on April 4, 2001 to discuss their

---

[1] De Lage arranges equipment leasing and financing for commercial enterprises. Griffin was a manager in the firm's Healthcare Strategic Business Unit and reported to the firm's general manager, Donald Flassing.

expectations of each other. When Ortega learned she had contacted De Lage officials about him, Griffin claims Ortega became angry, followed her home, verbally abused her, warned her to find another job, and physically assaulted her. Griffin received medical treatment for her injuries, requested police assistance, and attempted to prosecute Ortega. The case was ultimately dismissed and Ortega's record expunged. Griffin claims the dismissal resulted only because the prosecutor failed to appear for the preliminary hearing in state court.

Griffin informed De Lage officials of the assault and De Lage took no formal action, apparently because the assault was not on De Lage premises and did not concern its business. Griffin claims she received assurances from one De Lage official that she would not have to work with, deal with, or report to Ortega, but claims another official nevertheless insisted they work together.

As a result, Griffin contends Ortega made her professional life difficult and fostered a sexually hostile work environment, which De Lage tolerated and refused to address. She claims Ortega had influence over the performance of her team and over others in her workplace, and that her complaints to De Lage officials about her treatment went unanswered. Shortly after the statute of limitations on her assault expired, Griffin claims Ortega launched a campaign in June, 2003 to have her fired. Griffin was eventually fired July 7, 2003. Ortega was subsequently fired for unrelated reasons concerning misuse of his De Lage expense account.

De Lage maintains Griffin's dismissal was performance-related, i.e., based on management deficiencies and Griffin's unprofessional conduct. It denies any acquiescence in, or knowledge of, any effort to unlawfully discriminate or retaliate against Griffin, or to create a hostile work environment.

I.      Motion to Preclude Evidence of Ortega's Alleged Assault

De Lage seeks to preclude as irrelevant all evidence related to Ortega's alleged assault on April 4, 2001. Griffin not only seeks to testify concerning the assault, she also seeks to introduce photographs of her injuries, medical reports of her treatment, police testimony, and court records.

To prove her Title VII retaliation claim, Griffin must establish she engaged in protected activity, De Lage took adverse employment action against her based on a retaliatory motive, and there was a causal connection between the protected activity and De Lage's adverse employment action. Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995); Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir. 1997). To prove a hostile work environment based on sexual harassment, Griffin must establish: (1) the harassment was so severe or pervasive that it altered the conditions of her employment, creating an abusive working environment; and (2) a sufficient basis for imputing the conduct that created the hostile environment to the employer. Ferris v. Delta Air Lines, Inc., 277 F.3d 128, 136 (2d Cir. 2001). Griffin must prove that De Lage knew, or should have known of the sexually hostile work environment and failed to take prompt and appropriate action to stop it. The inquiry involves both an examination of Griffin's subjective beliefs and whether a reasonable person would find the environment hostile. Spain v. Gallegos, 26 F.3d 439, 450 (3d Cir. 1994).

Griffin claims all evidence relating to the Ortega assault is critical to her claims because it establishes the severity of the assault and the way it was handled by De Lage. It will also prove that co-worker rumors doubting the assault were false and unwarranted. Although the assault occurred outside the business place, Griffin claims De Lage is responsible for "taking reasonable corrective action for illegal behavior under these circumstances" because Griffin and Ortega

discussed their working relationship at the dinner that preceded the assault, and De Lage sales employees often must work outside the office.

As a threshold matter, Griffin posits an overly expansive view of De Lage's obligations as an employer. The authority she relies on, <u>Little v. Windermere Relocation, Inc.</u>, 301 F.3d 958, 967 (9th Cir. 2002), involved a saleswoman subjected to a triple rape by a client after passing out during a business dinner with the client. After being informed of the rapes, the employer summarily deemed the incident outside its sexual harassment policy because it had not occurred on its business premises. Moreover, the employer pressured the plaintiff to generate business from the rapist's firm, warned her not to report the incident, and reduced her compensation when she nevertheless reported it to the employer's president. <u>Id.</u> Under these circumstances, the court determined, the nature of the employer's business extended the work environment "beyond the physical confines of the corporate office," and required plaintiff to have out-of-office meetings with potential clients. <u>Id.</u>

Similarly, Griffin's other authority, <u>Ferris</u>, 277 F.3d at 131-35, involved the triple rape of a female flight attendant by a male co-worker, who drugged her drink during a social visit in his hotel room during a layover in Italy. The court denied summary judgment based on the airline's knowledge of prior drug-induced sexual assaults by the male flight attendant, and the airline's failure to address the triple rape after receiving notice of it. Based on the "special set of circumstances" in which airlines book and finance hotel lodging for flight crews on foreign soil, the court said, a jury could find the assaults took place in the airline's work environment. <u>Id.</u>

To be sure, many De Lage employees, such as Griffin, appear to be required to work outside the office to generate business. It is far from clear, however, that Griffin's pre-assault

dinner with Ortega to "discuss their expectations of each other," after the break-up, see Plaintiff's Answer to Defendant's Motion to Preclude, at 4, constituted the type of extended workplace environment contemplated by the courts in Little and Ferris. During dinner, Griffin apparently informed Ortega she had asked De Lage officials to ensure she was not supervised by Ortega because of the break-up. Such a conversation between two former lovers arguably does not concern De Lage's business, which involves commercial leasing and financing. In any event, it pales in comparison to Little, where a saleswoman was repeatedly raped by a potential customer after a business dinner, and Ferris, where a flight attendant was drugged and raped by her co-worker while housed in employer lodging on a business trip.

Griffin nonetheless maintains extrinsic evidence of assault should be admitted because it "exposes the significance of [De Lage's] abdication of its legal duty," see Plaintiff's Answer at 6, by failing to investigate and corroborate Griffin's reported assault and discipline Ortega. Such inactivity, in the face of overwhelming corroborating evidence, Griffin claims, reinforces her harassment claim and "meant plaintiff had to return to a compromised work environment." Id. This, she claims, fanned rumors within the workplace that Griffin's assault had not taken place and De Lage did nothing to control the situation. Griffin claims her pre-assault notice to De Lage of her concerns about Ortega, required the company to "take action reasonably likely to prevent [Ortega] from following through, as he later did, on the threat to [her] job that accompanied the assault." Id. at 9.

Evidence is admissible if it is relevant, i.e., if it tends to make the existence or nonexistence of a disputed material fact more probable than it would be without that evidence. See Fed. R. Evid. 401, 402. Pursuant to Rule 403 of the Federal Rules of Evidence, I may

nonetheless exclude relevant evidence if the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.  Rule 403 is an "umbrella rule" applied "in tandem with other Federal Rules under which evidence would be admissible."  See Coleman v. Home Depot, Inc., 306 F.3d 1333, 1343 (3d Cir. 2002).  Although there is a strong presumption that relevant evidence should be admitted, exclusion under Rule 403 is justified if the probative value of evidence is "'substantially outweighed' by the problems in admitting it."  Id. at 1343-1344.

     Ortega is not a party to this suit; only De Lage is named.  Griffin does not allege De Lage had any prior notice of Ortega's violent propensity.  Moreover, Griffin's suit does not allege any assault charge against Ortega; the state court resolved that question -- at least in a technical sense.  Evidence of Ortega's assault is relevant only for the limited purpose of establishing a factual context for Griffin's meetings with De Lage officials.  It will allow the jury to understand the relationship between Griffin and Ortega, the nature of the break-up, and how, if at all, those events led to harassment, retaliation, or a hostile work environment.  Moreover, the need to corroborate Griffin is adequately addressed by the parties stipulation that she received medical treatment for her injuries on April 5, 2001.  Color photographs of her bruises are unnecessary to assist the jury in its task.

     Additional extrinsic evidence carries a serious risk of unfair prejudice, confusing the issues, misleading the jury, and wasting time.  De Lage was not a party to the assault.  The jury already must navigate difficult issues of workplace harassment, retaliation, and hostile environment.  Highly prejudicial evidence such as color photographs of Griffin's injuries, police

testimony, medical treatment records, and statements from Griffin's parents on the aftermath of the assault will confuse and distract the jury from its narrow inquiry. The issue at trial will be Griffin's treatment in the workplace by De Lage; not the nature and details of her assault by a non-party. Exposing the jury to conflicting evidence whether the assault prosecution and Ortega's expungement were properly handled and fairly adjudicated is collateral and irrelevant. Ortega denies the assault; De Lage never challenged Griffin's version. Neither the police nor the state courts resolved the merits of the issue. It is not the province of a Title VII jury to struggle with a collateral issue that probably can never be adequately resolved since there were no third-party eyewitnesses.

Even assuming the doubtful proposition that extrinsic evidence is somehow probative, its value is substantially outweighed by the danger of unfair prejudice to De Lage, by a serious danger of confusing the issues on trial, by a significant risk the jury will be misled, and by considerations of delay and waste of time.

Griffin will be permitted to explain her relationship with Ortega, and reference the April 4, 2001 assault for the limited purpose of explaining how she believes her break-up and subsequent assault led to harassment and retaliation by De Lage and its creation of a hostile work environment. No extrinsic evidence will be permitted and no blow-by-blow of the assault will be admitted. Although Griffin seeks to recount Ortega's highly profane language, she will be limited to stating that he used profane language and then inflicted injuries that merited medical treatment and notice to the police. If Ortega or other De Lage officials had used such language in the workplace, of course, a verbatim recitation would have been admissible.

I find no merit in Griffin's claim that any additional evidence is needed to rebut any

7

disbelief by co-workers of her assault claim. Trial will be limited to how De Lage may have fostered or tolerated an atmosphere of harassment, retaliation and hostility. The subjective beliefs of Griffin's co-workers are irrelevant, especially since the parties concede no upper-level De Lage managers ever challenged Griffin's version of events. For this reason, I also grant De Lage's objection to Griffin's jury instruction 19 (spreading false rumors).

Griffin contends her theory is supported by Spain, 26 F.3d at 447-49. In Spain, however, the plaintiff claimed her supervisor perpetuated false rumors within the workplace of a sexual relationship between him and the plaintiff. This conduct impugned the integrity of the plaintiff's job performance and hindered her career advancement. The court contrasted that scenario with cases involving rumors about the "behavior of co-workers outside of the workplace," and cases of "idle gossip about an alleged office romance." Id. Griffin's attempt to impute discriminatory conduct to De Lage based on co-worker speculation that Griffin fabricated the Ortega assault fails to implicate Title VII. Idle gossip about whether a consensual romantic relationship between co-workers ended in assault does not implicate issues of sexual harassment by De Lage. Although Griffin can establish her Title VII claim of a sexually hostile work environment without proving blatant sexual misconduct, id. at 447, a more intensive analysis is merited in atypical cases such as this. Id. Griffin's reliance on rumors among co-workers concerning her credibility on the assault question is distinct from rumors of sexual activity within the workplace. Griffin will be required to establish a connection between any sexually harassing activity outside the workplace, i.e., the assault by a former boyfriend/co-worker, and her employment.

In addition, I grant De Lage's motion to preclude exhibits 1, 59, 60, 61, and 62, which constitute extrinsic evidence of the assault and the state court proceedings. I also grant De

Lage's motion concerning exhibits 63, 64, 65 (plaintiff's medical records) to the extent they relate to the assault. Redacted versions may be admitted to prove damages. Similarly, I grant De Lage's motion to preclude testimony from Griffin's parents, except any testimony they might offer on damages based on emotional distress after her termination.

Finally, Griffin's exhibits 56-58 (EEOC right-to-sue documents) are irrelevant given the parties stipulation, and I find no relevance in exhibit 55, an unsigned letter to William Nasri, and will deny its admission.

## II. Evidence of Ortega's Termination

De Lage also seeks to preclude evidence concerning Ortega's termination for falsifying his employee account after Griffin had been dismissed. Griffin claims it is relevant because she had raised this issue but De Lage apparently took no action against Ortega on her complaint. Ortega was dismissed only after a male co-worker lodged a similar complaint. The evidence is marginally relevant because Griffin claims it tends to support her claim that De Lage's stated reasons for dismissing her were pretextual, i.e., she was fired because she was a woman who had alleged harassment by a favored male superior. Moreover, De Lage has identified no substantial risk of unfair prejudice. Testimony on this question will be perfunctory and brief.

## III. Motion to Bifurcate

De Lage seeks to birfurcate the liability and damages portion of the trial to avoid potential prejudice and to streamline the proceedings. Griffin maintains bifurcation is unnecessary because five of her damage witnesses will also be fact witnesses. My resolution of the issues relating to extrinsic evidence of the assault significantly streamlines the trial and mitigates the risk of prejudice. Any remaining risk that testimony on damages could prejudice the jury can be

effectively eliminated by a limiting instruction, as it is in any other discrimination case. Nothing about this case is so unique to merit bifurcation.

      IV.     Plaintiff's Motion to Preclude Medical Record Evidence from 1995

De Lage seeks to introduce exhibits excerpted from Griffin's 1995 medical records referencing a problem with, and dependence on, a relationship with "a boyfriend." This evidence significantly predates Griffin's 2003 dismissal. Any marginal relevance the 1995 reports have to Griffin's damages is substantially outweighed by the danger of unfair prejudice, misleading the jury and confusion of issues. See Rule 403. Defendant has failed to explain how a medical report eight years before the events relating to this case is probative. If admitted, the evidence would force the jury to speculate on the identity of the boyfriend and the underlying reasons for Griffin's need for medical treatment. Like the extrinsic evidence of Griffin's assault, the jury should not be required to stray from its narrow task of determining De Lage's liability for alleged harassment, retaliation, and hostility in the workplace.

      An appropriate Order follows.